## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RPR ENTERPRISES, INC.,  d/b/a )<br>TOPSY'S POPCORN & ICE CREAM; )<br>TOPSY'S INTERNATIONAL, INC.; )<br>RAMMKERR, INC.; and BIG TOP, LLC )<br>d/b/a BROOKSIDE PARTY WAREHOUSE, )<br>Individually and on behalf of all others )<br>similarly situated, )<br>) Case No. 20-cv-2256<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CONTINENTAL WESTERN GROUP, LLC, and )<br>)<br>UNION INSURANCE COMPANY, )<br>)<br>Defendants. ) | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs RPR Enterprises, Inc., d/b/a Topsy's Popcorn & Ice Cream, Topsy's International, Inc., RammKerr, Inc., and Big Top, LLC d/b/a Brookside Party Warehouse ("Plaintiffs"), individually and on behalf of all others similarly situated, for their Class Action Complaint against Defendants Continental Western Group, LLC and Union Insurance Company ("Defendants"), states and alleges as follows:

## NATURE OF ACTION

1.      According to information published by the Insurance Information Institute, the U.S. insurance industry collected net premiums of $1.22 trillion in 2018.  Premiums recorded by property/casualty insurers accounted for 51% of that amount.  Between 2014 and 2018, these insurers wrote net premiums each year of between $497 billion to $612.6 billion but only incurred losses of between $277.7 billion and $360.9 billion.

2.      Plaintiffs RPR Enterprises and Rammker, Inc. operate more than a dozen Topsy's Popcorn and Ice Cream shops in Missouri and Kansas, including locations in shopping centers and strip malls, as well as a distribution center for fulfilling online orders. Plaintiff Topsy's International is the franchisor of Topsy's shops in Missouri and Kansas and receives a fee based upon monthly revenue of these stores. Topsy's Popcorn has been a Kansas City area tradition for more than 60 years. Plaintiff Big Top sells holiday and party wares, such as colored and themed paper plates, cups, napkins, tableware, helium balloons, and party decorations. As a result of COVID-19 and Stay at Home Orders (as defined below), Plaintiffs have been forced to greatly reduce or completely halt their operations.

3.      Plaintiffs purchased an all-risk commercial property insurance policy from Defendants to protect them in the event of property loss and business interruption. COVID-19 and the resulting response by state and local governments have caused physical loss of Plaintiffs' property and have interrupted Plaintiffs' business. Yet, as of this date Defendants have refused to honor their promise to provide the protection that Plaintiffs purchased. Moreover, Plaintiffs are not unique. The insurance industry appears to be taking a uniform approach to the current pandemic: deny coverage even when the policy they drafted and offered to insureds, and the policy paid for by the insureds, does not contain an exclusion for pandemic- or virus-related losses. Plaintiffs' policy with Defendants is one such policy and exemplifies the broken promise from insurance companies across the country.

4.      This is a class action for declaratory judgment and breach of contract arising from Defendants' refusal to pay claims related to COVID-19 as required by their property insurance agreements they sold to Plaintiffs and other businesses.

5. The novel coronavirus – named "severe acute respiratory syndrome coronavirus 2" or "SARS-CoV2" – has spread widely and rapidly across the United States. The illness related to SARS-CoV-2 is "novel coronavirus disease 2019," commonly abbreviated to "COVID-19." Although the virus and related illness are distinct, for purposes of this Complaint, Plaintiffs refer to both interchangeably as "COVID-19."

6. Over 90,000 Americans have died of COVID-19 as of the date of this filing, according to the CDC.

7. A growing body of evidence suggests that the virus transmits both through droplets, when someone sneezes and coughs, and aerosols, which are produced by normal breathing.

8. Aerosols are particularly concerning because unlike droplets, which are suspended only for a few seconds, aerosols are water droplets suspended in air and can remain suspended for hours, until gravity ultimately forces them to the nearest surface below.

9. Consequently, aerosols can spread widely through air flow and settle on surfaces hundreds of feet away from any infected individual. Thus, someone not even in the vicinity of an infected person can unknowingly touch an infected surface, later touch their face, and become infected.

10. In an effort to combat the virus and slow the spread of COVID-19, state and local governments across the country have imposed directives requiring residents to remain in their homes except to perform certain "essential" activities, like shopping for food, going to see a doctor, or getting fresh air.

11. The state and local directives typically require businesses deemed "non-essential" to be closed and in-person work is not permitted. But even businesses classified as "essential"

have been severely impacted by the pandemic. For example, "essential" businesses have had to increase the frequency of cleaning, reduce hours, and install new protective barriers between employee and customer, limit the number of customers allowed on the premises and provide personal protective equipment to its workforce. But even with those precautions, many such business have had great difficulty retaining employees who fear becoming infected at work.

12.    Plaintiffs' retail stores are located in the Kansas City metropolitan area, Topeka, Kansas, and St. Joseph, Missouri. Plaintiffs do business throughout the United States and abroad through its online store.

13.    Johnson County, Kansas and the State of Kansas have issued stay-at-home orders, along with the neighboring City of Kansas City, Missouri, County of Jackson County, Missouri and State of Missouri (hereinafter "Stay at Home Orders"). Although these Stay at Home Orders have been relaxed to some limited extent, burdensome restrictions remain in effect and continue to cause the suspension of non-essential and essential businesses.

14.    The Stay at Home Orders and the transmission of COVID-19 have had a devasting effect on Plaintiffs' business. Because of the Stay at Home Orders and the transmission of COVID-19, Plaintiffs have had to shut down their retail operations.

15.    Plaintiffs' premises have been designated by city, county, and state orders as affected with COVID-19. Plaintiffs have suffered loss of or damage to property under the meaning of the policy. Public ingress and egress to the properties is currently precluded or substantially limited due to the Stay at Home Orders and they likely have been infected with COVID-19. Plaintiffs have suffered direct physical loss to the property.

16.    According to the World Health Organization ("WHO"), the incubation period for the coronavirus is at least 14 days.

17.    The New England Journal of Medicine reports the first reported case in the United States was on January 20, 2020 in the State of Washington[1]—weeks earlier than previously reported, suggesting that the virus has been circulated in the United States far longer than previously assumed. It is likely customers, employees, and/or other visitors to the insured property over the last two-and-a-half months were infected with the coronavirus and thereby infected the insured property with the coronavirus.

18.    The transmission of COVID-19 and the Stay at Home Orders have otherwise affected Plaintiffs' or other Class members' business. For example, customers cannot access the property due to the Stay at Home Orders. Suppliers have also been similarly restricted by the pandemic.

19.    But Plaintiffs, like countless other small businesses, prepared for an unexpected event like the COVID-19 pandemic. Specifically, they purchased property insurance from Defendants, bearing Policy No. CPA 3064423-25 (the "Policy"). Attached hereto as Exhibit A is a true and correct copy of the Policy.

20.    The Policy is comprised of a number of forms and endorsements that define the scope of coverage. Upon information and belief, the forms and endorsements used in the Policy are materially the same as those policies held by the members of the proposed class.

21.    The Policy is an all-risk policy, meaning it covers all losses to Covered Property unless specifically excluded. The term "loss" is not defined by the Policy.

22.    As set forth below, the Policy also provides coverage for:

        a.    losses sustained due to the necessary suspension of operations ("Business Income" coverage) (Exhibit A, p. 141);

---

[1] https://www.nejm.org/doi/full/10.1056/NEJMoa2001191 (last accessed April 29, 2020)

b.     expenses incurred to minimize suspension of business ("Extra Expense" coverage) (Exhibit A, p. 141);

c.     interruption of business caused by an order from a civil authority ("Civil Authority" coverage) (Exhibit A, p. 142); and

d.     expenses necessary to protect Covered Property from further damage in the event of a loss ("Sue and Labor" coverage) (Exhibit A, p. 145).

23.     The Policy defines "suspension" to include the "slowdown or cessation of your business activities[.]"

24.     In addition, the Policy requires Plaintiffs to "[t]ake all reasonable steps to protect the Covered Property from further damage" when a loss occurs, which in this instance required Plaintiffs to suspend operations to reduce the spread of COVID-19 and further losses occasioned by its spread on Plaintiffs' premises.

25.     On or about March 2020, Plaintiffs notified Defendants of a loss covered by the Policy, seeking coverage related to COVID-19.

26.     On May 11, 2020, Defendants denied Plaintiffs' claim.

27.     As Defendants' denial of Plaintiffs' claim illustrates, Defendants have uniformly refused to pay their insureds under their standard policy for losses related to COVID-19. Defendants are in breach of their obligations by refusing to provide coverage and pay the claim.

28.     Defendants have caused material harm to Plaintiffs and the proposed class by refusing coverage under the Policy.

## PARTIES

29.     Plaintiff RPR Enterprises, Inc., d/b/a Topsy's Popcorn and Ice Cream is a Missouri corporation with its principal place of business in Kansas City, Missouri. Plaintiff RPR Enterprises owns and operates the Topsy's Popcorn shops in Missouri.

30.     Plaintiff Topsy's International, Inc. is a Missouri corporation with its principal place of business in Kansas City, Missouri. Plaintiff Topsy's International is the franchisor of all the Topsy's stores in the Missouri and Kansas area and it receives fees based upon the monthly sales of these Topsy's stores.

31.     Plaintiff RammKerr, Inc. is a Missouri corporation with its principal place of business in Kansas City, Missouri. Plaintiff RammKerr owns and operates the Topsy's Popcorn shops in Kansas.

32.     Plaintiff Big Top, LLC d/b/a Brookside Party Warehouse is a Missouri limited liability company with its principal place of business in Kansas City, Missouri. Plaintiff Big Top sells holiday and party wares.

33.     Defendant Continental Western Group, LLC is a Delaware limited liability company, with its principal place of business in Des Moines, Iowa.

34.     Defendant Union Insurance Company is an Iowa corporation, with its principal place of business in Iowa.

## JURISDICTION AND VENUE

35.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from Defendants, the amount in controversy exceeds $5 million exclusive of interest and costs, and the proposed class contains more than 100 members.

36.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiffs' causes of action occurred in this judicial district and division. The Policy at issue covers Plaintiffs' facilities located in the State of Kansas, Plaintiffs purchased the Policy from an insurance broker in the State of Kansas, and Defendants issued the Policy with Kansas endorsements.

## FACTUAL BACKGROUND

37.     COVID-19 and the Stay at Home Orders forced Plaintiffs to close their retail operations, including those located in Johnson County, Kansas, Jackson County, Missouri, and Kansas City, Missouri.

38.     Effective at 12:01 a.m. on March 24, 2020, Johnson County, Kansas issued a stay-at-home Order to mitigate the spread of COVID-19 in Johnson County, Kansas on the basis of a confirmed outbreak and person-to-person spread of COVID-19 in the United States, Kansas and Johnson County.[2] The Johnson County Order specifically recognized that COVID-19 spreads easily from person to person and may result in serious illness or death. It further identified COVID-19 as public disaster affecting life, health, property, and the public peace. The Johnson County Order was issued to mitigate and slow the spread of COVID-19 in the community.

39.     Effective at 12:01 a.m. on March 28, 2020, the Governor of Kansas issued an executive order establishing a statewide "stay-home" order in conjunction with the Kansas Essential Function Framework for COVID-19 response efforts, superseding the Johnson County Order. The Kansas Order directed all Kansas to stay in their homes to slow the spread of COVID-19.[3] The purpose of the Kansas Order is to "mitigate the spread of COVID-19

---

[2]     https://www.jocogov.org/sites/default/files/documents/CMO/JoCo%20Public%20Health%20Officer%20Stay%20at%20Home%20Order%203-22-20.pdf
[3]     https://www.coronavirus.kdheks.gov/DocumentCenter/View/873/Essential-Activities-and-Essential-Functions-PDF---4-15-20

throughout Kansas" as it recognized the confirmed presence of positive cases among 31 counties.[4]  On April 16, 2020, the Kansas Order was extended to May 3, 2020.[5]

40.    On March 21, 2020, the City of Kanas City, Missouri issued stay-at-home order prohibiting individuals from leaving their residences except to perform "Essential Activities," as defined in the order.[6] The order also required all "non-essential" businesses to cease in-person operations. As defined in the order, "Essential Businesses," include things like healthcare operations, essential infrastructure, and grocery stores. On April 16, 2020, Kansas City extended the Order through May 15.

41.    Effective 12:01 a.m. on March 24, 2020, Jackson County, Missouri issued a stay-at-home order prohibiting individuals from leaving their residences except to perform "Essential Activities" as defined in the order.[7] The order also required all "non-essential" businesses, like Plaintiff's retail stores, to cease in-person operations. On April 16, 2020, Jackson County, Missouri extended the Order through May 15, 2020.[8]

42.    On April 3, 2020, the State of Missouri issued a stay-at-home order similarly requiring individuals residing in Missouri to avoid leaving their homes, including to go to work, except as necessary to perform limited activities. On April 16, 2020, Missouri extended its order through May 3, 2020.  Collectively, these are referred to as "Stay at Home Orders" or "Orders."

43.    Although certain aspects of these Stay at Home Orders have been lifted, Plaintiffs are still subject to severe restrictions on their ability to operate.

---

[4]        https://governor.kansas.gov/wp-content/uploads/2020/03/EO20-16.pdf
[5]        https://www.coronavirus.kdheks.gov/DocumentCenter/View/132/Executive-Order-20-24-Statewide-Stay-Home-Order-PDF---4-16-20
[6]        https://www.kcmo.gov/home/showdocument?id=4065
[7]        https://cityofls.net/Portals/0/Jackson%20County%20Stay%20at%20Home%20Order.pdf
[8]        https://www.jacksongov.org/DocumentCenter/View/6660/Jackson-County-Stay-at-Home-Order

44.    As of April 17, 2020, at least 42 states and countless local governments have issued substantially similar directives. The purpose of these orders is to mitigate and slow the spread of COVID-19.

45.    These Stay at Home Orders are all consistent in relation to Plaintiffs' retail operations—they must remain closed. Accordingly, Plaintiffs' retail operations have always been closed while the Stay at Home Orders have been in effect.

46.    According to the Center for Disease Control ("CDC"), everyone is at risk of getting COVID-19.  The virus can spread by respiratory droplets when an infected person coughs, sneezes, or talks.  A person can become infected from respiratory droplets or potentially by touching a surface or object that has the virus on it and then by touching the mouth, nose, or eyes.[9]  According to studies, the virus can live on surfaces for several days if not longer.[10]

47.    In addition, some scientific publications have reported finding COVID-19 in the air.  The New England Journal of Medicine reported finding that experimentally produced aerosols containing the virus remained infectious in tissue-culture assays, with only a slight reduction in infectivity during a 3-hour period of observations.  "Aerosols from infected persons may therefore pose an inhalation threat even at considerable distances and in enclosed spaces…."[11]

48.    A consensus appears to be emerging that COVID-19 can also travel through the air via aerosols. For example, aerosol scientist Lidia Morawska of the Queensland University of Technology in Brisbane, Australia told *Nature* that, "In the minds of scientists working on this, there's absolutely no doubt that the virus spreads in the air. This is a no-brainer."[12]

---

[9] https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf

[10] https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf

[11] https://www.nejm.org/doi/full/10.1056/NEJMc2009324

[12] https://www.nature.com/articles/d41586-020-00974-w

49.    An April 2020 study published in the journal *Emerging Infectious Diseases* found a wide distribution of COVID-19 on surfaces and in the air about *13 feet* from patients in two hospital wards in Wuhan, China, leading the authors to conclude that the virus spreads in aerosols in addition to large respiratory droplets. The investigators found evidence of the virus in swabs of floors, computer mice, trash bins, bed handrails, patients' face makes, health workers' personal protective equipment, and air vents.[13]

50.    The authors also surmised that the high rate of positivity for floor samples in the hospital strongly suggest that droplets fall to the ground and then are spread via patients' shoes. For example, every sample tested from the pharmacy floor tested positive for COVID-19 even though no patients were housed there.[14]

51.    Another study conducted in Wuhan indicates that staff movement, floor cleaning, and the removal of personal protective equipment could transmit the virus through the re-suspension of virus-contaminated aerosols.[15]

52.    Kimberly Prather, an aerosol chemist at the University of California, San Diego told *Science* magazine: "I'm relieved to see aerosolization is accepted. This added airborne pathway helps explain why it is spreading so fast."[16]

53.    Aerosol particles are held in the air by physical and chemical forces. The suspended particles remain for *hours or more*, depending on factors such as heat and humidity. If virus particles can be suspended in air for more than a few seconds, like, for instance, the measles virus can, then anyone passing through could become infected by a pathogenic aerosol

---

[13]    https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces

[14]    https://www.cidrap.umn.edu/news-perspective/2020/04/study-finds-evidence-covid-19-air-hospital-surfaces

[15]    https://www.biorxiv.org/content/10.1101/2020.03.08.982637v1

[16]    https://www.sciencemag.org/news/2020/04/you-may-be-able-spread-coronavirus-just-breathing-new-report-finds#

cloud. And the virus can travel long distances and land on surfaces, only to be stirred back up into the air later by cleaning or other disturbances.

54.    The SARS virus that caused a 2003 epidemic is a coronavirus and is similar to COVID-19 (technically named SARS-CoV-2). As a result, the behavior of SARS during the 2003 epidemic provided evidence about any aerosol risk from COVID-19.

55.    A 2014 analysis published in the journal *Clinical Infectious Diseases* investigated a seemingly puzzling outbreak in a Hong Kong apartment complex whose residents had not been in close contact with each other.[17] The study found that "airborne spread was the most likely explanation, and the SARS coronavirus could have spread over a distance of 200 meters," or about 600 feet.[18]

56.    The implications of airborne spread of the virus are extremely serious. Airborne spread means that the virus can travel long distances from any infected person. It can then infect someone who unknowingly walks through a pathogenic cloud. It can also infect someone by settling on a physical surface, which someone touches and later becomes infected. And regardless of the transmission method, the evidence suggests that COVID-19 can be transmitted by shoes even once it reaches the ground.

57.    State and local governments have determined that without the Stay at Home Orders, COVID-19 could spread rampant throughout the community.

58.    The Orders in and around Plaintiffs' place of business also explicitly acknowledge that COVID-19 causes direct physical damage and loss to property:

> a.    the Johnson County, Kansas order states that COVID-19 "endanger[s] health, safety and welfare of persons and **property** within the border of Johnson

---

[17]    https://academic.oup.com/cid/article/58/5/683/365793
[18]    *Id.*

County, Kansas" and that it "remains a public disaster affecting life, healthy, **property**, and the public space.[19] (emphasis added); and

b.  the City of Kansas City, Missouri, issued Order 20-01 in response to the pandemic, which states that "the City wishes to employ all means available under the law to protect public life, health, safety and **property** to limit the development, contraction and spread of COVID-19"[20] (emphasis added).

59.    In order to protect itself against risks like COVID-19, Plaintiffs purchased the Policy from Defendants. The Policy was in effect at the time of the outbreak and remains in effect today. Plaintiffs paid all premiums required by the Policy.

60.    Plaintiffs are the Named Insured under the Policy, which remains in force.

61.    Defendants are the effective and liable insurers of the Policy, and policies meeting the class definition.

62.    Generally, under property insurance policies like those issued by Defendants to Plaintiffs and class members, the insuring agreements provide coverage for all risks of physical loss or damage to property, unless specifically excluded.

63.    The Policy is an all-risk policy, meaning it covers all losses to Covered Property unless specifically excluded.

64.    The Policy does not exclude or limit coverage for losses from viruses or communicable diseases like COVID-19. Nor does it contain a pandemic-exclusion clause.

65.    In fact, on April 27, 2020, Defendant sent Plaintiffs a letter informing them that a "Virus or Bacteria Exclusion" would be added to Plaintiffs' future commercial property policy.

---

[19]    https://www.jocogov.org/sites/default/files/documents/CMO/JoCo%20Public%20 Health%20Officer%20Stay%20at%20Home%20Order%203-22-20.pdf

[20]    http://mediaassets.kshb.com/NWT/Sam/Mayor%20Lucas%20Stay%20at%20Home%20 Order.pdf?_ga=2.87564241.83785035.1587504680-1549958454.1581544124

In adding the exclusion to its renewed policy, the letter stated: "When your Commercial Property coverage renews, loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease will be more specifically excluded to clarify that there is no intent for coverage."

66.    The risk of a virus like COVID-19 was foreseeable to, if not foreseen by, insurance companies like the Defendants. The Insurance Services Office ("ISO"), an organization that provides policy writing services to insurers, has recognized for years that a virus can constitute physical damage to property. Specifically, in 2006, it announced the submission of an exclusion of loss "due to disease-causing agents such as viruses and bacteria."

67.    In connection with circulating the virus exclusion, ISO sent the following statement to state insurance regulators:

> Disease-causing agents may render a product impure (change its quality or substance) or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

68.    Despite the availability of a specific exclusion for viruses, Plaintiffs' Policy contains no such exclusion.  Nor does Plaintiffs' Policy contain an exclusion for "pandemics," "communicable disease" or anything similar.

69.    Because damage due to viruses constitute physical damage and loss under the Policy and the Stay at Home Orders caused Plaintiffs to cease their retail operations, Plaintiffs' losses are covered under the Policy.

70.    The Policy provides coverage for several different types of losses arising from COVID-19 that are relevant here through specific Coverage Extensions.

71.    Defendants are obligated to pay for actual loss of **"Business Income"** sustained due to the necessary suspension of operations caused by direct physical loss or damage. Exhibit A at 141. "Business Income" means net income (net profit or loss before income taxes) that would have been earned or incurred in the absence of loss as well as continuing normal operating expenses, including payroll. *Id.* at 141. Coverage lasts during the "period of restoration" – beginning at the time of the direct loss and running through the earlier of the date the property is repaired or resumed at a new permanent location. *Id.* at 141, 149.  A "partial or complete cessation" of business activities constitutes a "suspension" under the Policy. *Id.* at 141.  Plaintiffs have suffered lost Business Income because they have suspended operations of their business due to COVID-19.

72.    Defendants also agreed to provide coverage from an interruption to business caused by an order from a **"Civil Authority."** Exhibit A at 142. Specifically, Defendants agreed to "pay for the actual loss of 'Business Income'" that Plaintiffs sustained and "necessary Extra Expense" caused by action of civil authority that prohibits access to" the Covered Property when, due to physical damage to property near the Covered Property, the civil authority prohibits access to property immediately surrounding the damaged property, the Covered Property is within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions." *Id.* Access has been restricted to the Covered Property due to the presence and threat of COVID-19 in the immediate surrounding areas and related Stay-at-Home Orders.

73.    Defendants also agreed to pay for **"Extra Expense."** Exhibit A at 141. Extra Expenses are expenses to avoid or minimize suspension of business whether or not operations

are able to continue and to repair or replace property. *Id.* at 141-42. Plaintiffs have suffered Extra Expenses because it has suspended operations due to COVID-19 to prevent physical damages to the premises by the presence or proliferation of the virus and the physical harm it could cause persons present there.

74.    Finally, the Policy also provides **"Sue and Labor"** coverage, which requires the insured to "[t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim" in the event of a loss or damage. Exhibit A at 145. Plaintiffs have taken such steps by, for example, complying with the Stay-at-Home Orders.

75.    Losses caused by COVID-19 and the related state and local Stay at Home Orders triggered these provisions of Plaintiffs' Policy. Specifically, Plaintiffs' operations have been suspended, and it has lost revenue and business opportunities because it has been unable to open their retail locations and serve customers and potential customers.

76.    Plaintiffs submitted a claim to Defendants for coverage under the Policy, but Defendants have denied Plaintiffs' claim.

## CLASS ACTION ALLEGATIONS

77.    Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiffs bring this action on behalf of himself and all others similarly situated, and seeks to represent the following nationwide classes:

a.    **Nationwide Declaratory Judgment and Injunctive Class.**  All businesses subject to a Stay at Home Order that are covered by one of the Defendants' policies which contains **Business Income, Extra Expense, Civil Authority,**

and/or **Sue and Labor** coverage on terms similar to the Plaintiffs' policy ("Policies") which were in effect during the COVID-19 pandemic.

b.   **Nationwide Breach Class.**   All policyholders of Defendants who made a claim and were denied coverage under one of Defendants' Policies due to COVID-19.

c.   **Kansas Subclass.** All policyholders who purchased one of Defendants' Policies in Kansas and were denied coverage due to COVID-19.

d.   **Missouri Subclass.**   All policyholders who purchased one of Defendants' Policies in Missouri and were denied coverage due to COVID-19.

Excluded from the Class is the Defendants, any entity in which the Defendants have a controlling interest, any of the officers, directors, or employees of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendants, anyone employed with Plaintiffs' counsel's firms, and any Judge to whom this case is assigned, and his or his immediate family.

78.    Plaintiffs' Classes satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action under Rule 23, as set forth more fully herein.

79.    **Numerosity**. COVID-19 has impacted thousands of businesses across the country and Defendants is a nationwide insurer with, on information and belief, hundreds or more policies issued with the relevant provisions.  Consequently, the Classes each number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied.  Moreover, because the members of the Classes are geographically dispersed across the country, and members of the Kansas Subclass and Missouri Subclass are geographically dispersed across the state, if not elsewhere, joinder of all Class members in a single action is impracticable. Class members and Kansas Subclass and Missouri Subclass members may be informed of the

pendency of this class action through direct mail or other means based on Defendants' records of their policyholders.

80.     **Commonality**. There are questions of fact and law common to the Classes that predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' actions include, without limitation, the following:

a.  Do the Policies cover losses resulting from the COVID-19 pandemic?

b.  Do the policies cover losses resulting from state and local Stay At Home Orders requiring the suspension or reduction in business?

c.  Has the Defendants wrongfully denied claims for business losses resulting from COVID-19 and/or the Stay at Home Orders?

d.  Does the **Business Income** coverage of the Policies cover losses caused by suspension of business due to COVID-19 and/or the Stay-at-Home Orders?

e.  Does the **Civil Authority** coverage of the Policies cover losses caused by suspension of business due to Stay-at-Home Orders issued by state and local governments?

f.  Does the **Extra Expense** coverage of the Policies cover losses incurred to minimize the harm to Plaintiffs and members of the Class' premises because of COVID-19 and/or the Stay-at-Home Orders?

g.  Does the **Sue and Labor** coverage of the Policies cover losses caused by suspension in business due to COVID-19 and/or the Stay-at-Home Orders?

h.  Are Class members entitled to reasonable attorneys' fees and expenses?

81.     **Predominance.** The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and

efficient adjudication of the claims asserted herein.  Specifically, thousands of business are impacted by Defendants' denial of coverage for COVID-19 losses and their claims arise from a common factual predicate, which is the nationwide shutdown and suspension of activities due to the virus.

82.    **Typicality.** Plaintiffs' claims are typical of those of the Classes as Plaintiffs were subject to the same or similar policy provisions and the losses for all members relate to COVID-19 and the related closure orders and the claims arise from the same legal theories.

83.    **Superiority**. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Class, Kansas Subclass, and Missouri Subclass. The presentation of separate actions by individual Class members, Kansas Subclass members and Missouri Subclass members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.

84.    **Adequacy**. Plaintiffs are an adequate representative of the Class, Kansas Subclass and Missouri Subclass because they are a member of the Class and their interests do not conflict with the interests of those it seeks to represent.  The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel, who have extensive experience prosecuting complex class litigation.

85.    **Declaratory Relief and certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure**. On information and belief, Defendants have refused, or intend to refuse, coverage due to COVID-19 business interruption and other covered losses for all, or most,

policyholders with covered Policies and final injunctive and/or declaratory relief mandating that Defendants cover the losses of Class members is appropriate respecting the class as a whole.

86.    **Issue Class and Modification of Class Definitions and Creation of Subclasses**. In the alternative, Plaintiffs reserve the right to seek certification of one or more common issues pursuant to Rule 23(c)(4). In addition, Plaintiffs reserve the right to modify the definitions of the class and/or create subclasses either by amendment to the complaint or by motion for class certification, including but not limited to subclasses for policyholders with each of the following Policy provisions: **Business Income, Extra Expense, Civil Authority,** and/or **Sue and Labor** and/or other subclasses as may be appropriate or necessary.

## COUNT I – DECLARATORY AND INJUNCTIVE RELIEF – BUSINESS INCOME
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class, Kansas Subclass and Missouri Subclass)

87.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

88.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

89.    An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Defendants, on the other hand, concerning the respective rights and duties of the parties under the Policies. On or about March 2020, Plaintiffs requested coverage for COVID-19 related losses through their broker. Defendants thereafter denied coverage.

90.    Defendants are in breach of their obligations by refusing to provide coverage despite having sufficient information to evaluate and pay the claim. Moreover, upon information and belief, Defendants have refused other, similar claims claiming that COVID-19 losses are not covered by the Policy.

91.    Plaintiffs contend that Defendants have breached the Polices in the following respects:

      a.    Plaintiffs and the class have suffered losses covered by the Business Income coverage in the Policies.

      b.    Defendants are obligated to pay Plaintiffs and the class for those losses.

      c.    Defendants have failed to pay Plaintiffs and the class for those losses.

92.    Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendants unlawful and in material breach of the policies so that future controversies may be avoided.

93.    Pursuant to a declaration of the parties' respective rights and duties under the policies, Plaintiffs further seek an injunction enjoining Defendants (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Business Income Coverage Extension; and (2) ordering Defendants to comply with the terms of the Policies in regards to coverage decisions.

## <u>COUNT II – BREACH OF CONTRACT – BUSINESS INCOME</u>
**(On behalf of Nationwide Breach Class, Kansas Subclass, and Missouri Subclass)**

94.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

95.    Plaintiffs and the class purchased property coverage policies from Defendants.

96.    The Polices are valid and enforceable contracts between Defendants and Plaintiffs and class members.

97.    Plaintiffs and the class substantially performed their obligations under the terms of the Policies including giving Defendants notice of the claim. Alternatively, Defendants have waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

98.    Plaintiffs and the class have sustained a loss under the Business Income Coverage in the Policies arising from the COVID-19 virus and associated state and local Stay at Home Orders.

99.    Defendants have denied claims for Business Income related to COVID-19 on a uniform and class-wide basis, breach of the Policies.

100.    As a direct and proximate result of Defendants' breaches, Plaintiffs and the class have sustained damages in an amount to be determined at trial.

### COUNT III – DECLARATORY AND INJUNCTIVE RELIEF – CIVIL AUTHORITY
**(On behalf of Nationwide Declaratory Judgment and Injunctive Class, Kansas Subclass, and Missouri Subclass)**

101.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

102.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

103.    An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Defendants, on the other hand, concerning the respective rights and duties of the parties under the Policies.

104.    Plaintiffs contend that Defendants have breached the Policies in the following respects:

a.    Plaintiffs and the class have suffered losses covered by the Civil Authority coverage in the Policies.

b.    Defendants are obligated to pay Plaintiffs and the class for those losses.

c.    Defendants have failed to pay Plaintiffs and the class for those losses.

105.    Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendants unlawful and in material breach of the Policies so that future controversies may be avoided.

106.    Pursuant to a declaration of the parties' respective rights and duties under the Policies, Plaintiffs further seek an injunction enjoining Defendants (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Civil Authority coverage in the Policies; and (2) ordering Defendants to comply with the terms of the Policies in regards to coverage decisions.

## COUNT IV – BREACH OF CONTRACT – CIVIL AUTHORITY
**(On behalf of Nationwide Breach Class, Kansas Subclass, and Missouri Subclass)**

107.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

108.    Plaintiffs and the class purchased property coverage policies from Defendants.

109.    The Policies are valid and enforceable contracts between Defendants and Plaintiffs and class members.

110.    Plaintiffs and the class substantially performed their obligations under the terms of the Policies including giving Defendants notice of the claim. Alternatively, Defendants have waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defendant to liability.

111.    Plaintiffs and the class have sustained a loss under the Civil Authority coverage in the Policies arising from the COVID-19 virus and associated state and local Stay at Home Orders.

112.    Defendants have denied claims for recovery under the Civil Authority coverage in the Policies related to COVID-19 and the Stay at Home Orders on a uniform and class-wide basis, in breach of the Policies.

113.     As a direct and proximate result of Defendants' breaches, Plaintiffs and the class have sustained damages in an amount to be determined at trial.

## COUNT V – DECLARATORY AND INJUNCTIVE RELIEF – EXTRA EXPENSE
### (On behalf of Nationwide Declaratory Judgment and Injunctive Class, Kansas Subclass, and Missouri Subclass)

114.     The preceding paragraphs are incorporated by reference as if fully alleged herein.

115.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

116.     An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Defendants, on the other hand, concerning the respective rights and duties of the parties under the Policies.

117.     Plaintiffs contend that Defendants have breached the Policies in the following respects:

      a.     Plaintiffs and the class have suffered losses covered by the Extra Expense coverage in the Policies.

      b.     Defendants are obligated to pay Plaintiffs and the class for those losses.

      c.     Defendants have failed to pay Plaintiffs and the class for those losses.

118.     Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendants' unlawful and in material breach of the policies so that future controversies may be avoided.

119.     Pursuant to a declaration of the parties' respective rights and duties under the Policies, Plaintiffs further seek an injunction enjoining Defendants (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Extra Expense

coverage in the Policies; and (2) ordering Defendants to comply with the terms of the Policies in regards to coverage decisions.

<u>**COUNT VI – BREACH OF CONTRACT – EXTRA EXPENSE**</u>
**(On behalf of Nationwide Breach Class, Kansas Subclass, and Missouri Subclass)**

120.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

121.    Plaintiffs and the class purchased property coverage policies from Defendants.

122.    The Policies are valid and enforceable contracts between Defendants and Plaintiffs and class members.

123.    Plaintiffs and the class substantially performed their obligations under the terms of the Policies including giving Defendants notice of the claim. Alternatively, Defendants have waived any terms or conditions of coverage and may not assert any term or condition in the Policy as a defense to liability.

124.    Plaintiffs and the class have sustained a loss under the Extra Expense coverage in the Policies arising from COVID-19 virus and associated state and local Stay at Home orders.

125.    Defendants have denied claims for recovery under the Extra Expense coverage in the Policies related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

126.    As a direct and proximate result of Defendants' breaches, Plaintiffs and the class have sustained damages in an amount to be determined at trial.

<u>**COUNT VII – DECLARATORY AND INJUNCTIVE RELIEF – SUE AND LABOR**</u>
**(On behalf of Nationwide Declaratory Judgment and Injunctive Class, Kansas Subclass, and Missouri Subclass)**

127.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

128.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

129.    An actual controversy has arisen and now exists between Plaintiffs and the class, on the one hand, and Defendants, on the other hand, concerning the respective rights and duties of the parties under the Policies.

130.    Plaintiffs contend that Defendants have breached the Policies in the following respects:

a.    Plaintiffs and the class have suffered losses covered by the Sue and Labor provision in the Policies.

b.    Defendants are obligated to pay Plaintiffs and the class for those losses.

c.    Defendants have not paid for those losses and is in breach.

131.    Plaintiffs therefore seek a declaration of the parties' respective rights and duties under the Policies and requests the Court declare the aforementioned conduct of Defendants unlawful and in material breach of the Policies so that future controversies may be avoided.

132.    Pursuant to a declaration of the parties' respective rights and duties under the Policies, Plaintiffs further seek an injunction enjoining Defendants (1) from continuing to engage in conduct in breach of the Policies in regards to coverage decisions under the Sue and Labor provision; and (2) ordering Defendants to comply with the terms of the Policies in regards to coverage decisions.

### COUNT VIII – BREACH OF CONTRACT – SUE AND LABOR
**(On behalf of Nationwide Breach Class, Kansas Subclass, and Missouri Subclass)**

133.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

134.    Plaintiffs and the class purchased property coverage policies from Defendants.

135.    The Policies are valid and enforceable contracts between Defendants and Plaintiffs and class members.

136.    Plaintiffs and class substantially performed their obligations under the terms of the Policies including giving Defendants notice of the claim. Alternatively, Defendants have waived any terms or conditions of coverage any may not assert any term or condition in the Policy as a defense to liability.

137.    Plaintiffs and the class have sustained a loss covered by the Sue and Labor provision in the Policies arising from the COVID-19 virus and associated state and local Stay at Home orders.

138.    Defendants have not agreed to pay the claim under the Sue and Labor provision or requested a proof of loss. Instead, Defendants have requested information not necessary to determine coverage.

139.    Defendants have denied claims for recovery under the Sue and Labor provision related to COVID-19 on a uniform and class-wide basis, in breach of the Policies.

140.    As a direct and proximate result of Defendants' breaches, Plaintiffs and the class have sustained damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, requests relief and judgment against Defendants as follows:

a.    That the Court enter an order certifying the class, appointing Plaintiffs as representatives of the class, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

b.    For a judgment against Defendants for the causes of action alleged against it;

c.    For compensatory damages in an amount to be proven at trial;

    d.      For a declaration that Defendants' conduct as alleged herein is unlawful and in material breach of the Policy;

    e.      For appropriate injunctive relief, enjoining Defendants from continuing to engage in conduct related to the breach of the Policy;

    f.      For pre-judgment and post-judgment interest at the maximum rate permitted by law;

    g.      For Plaintiffs' attorney's fees;

    h.      For Plaintiffs' costs incurred; and

    i.      For such other relief in law or equity as the Court deems just and proper.

## **DEMAND AND DESIGNATION FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable and designates Kansas City, Kansas as the place of trial.

Date: May 22, 2020            Respectfully submitted,

                        **STUEVE SIEGEL HANSON LLP**

                        *s/ Patrick J. Stueve*
                        Patrick J. Stueve KS Bar #13847
                        Bradley T. Wilder D. Kan #78301
                        Curtis Shank KS Bar #26306
                        460 Nichols Road, Suite 200
                        Kansas City, Missouri 64112
                        Telephone:    816-714-7100
                        Facsimile:    816-714-7101
                        Email:        stueve@stuevesiegel.com
                        Email:        wilders@stuevesiegel.com
                        Email:        shank@stuevesiegel.com

**LANGDON & EMISON**

J. Kent Emison     D.Kan.    #78360
LANGDON & EMISON LLC
911 Main Street
PO Box 220
Lexington, Missouri 64067
Phone: (660) 259-6175
Fax: (660) 259-4571
kent@lelaw.com


**MILLER SCHIRGER LLC**

John J. Schirger        D. Kan. #78228
Matthew W. Lytle        D. Kan. #78109
Joseph M. Feierabend   D. Kan. #78350
MILLER SCHIRGER, LLC
4520 Main Street, Suite 1570
Kansas City, MO 64111
Telephone: (816) 561-6500
Facsimile:   (816) 561-6501
jschirger@millerschirger.com
mlytle@millerschirger.com
jfeierabend@millerschirger.com


**SHAFFER LOMBARDO SHURIN, P.C.**

Richard F. Lombardo  KS# 22326
Dawn M. Parsons  KS# 16346
Michael F. Barzee  KS# 27217
Rachael D. Longhofer  KS# 25451
2001 Wyandotte Street
Kansas City, MO 64108
816-931-0500
816-931-5775 (Fax)
rlombardo@sls-law.com
dparsons@sls-law.com
mbarzee@sls-law.com
rlonghofer@sls-law.com
*Attorneys for Plaintiffs and the Proposed Classes*